**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| SESAME WORKSHOP,<br><br>                    Plaintiff,<br><br>     v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A,"<br><br>                    Defendants. | Case No. 25-cv-00375 |

## COMPLAINT

Plaintiff Sesame Workshop ("Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations Identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I.        JURISDICTION AND VENUE

1.        This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may exercise personal jurisdiction over Defendants because Defendants structure their business activities to target consumers in the United States, including Indiana, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Indiana residents by setting up and operating e-commerce stores that target United States consumers; offer shipping to the United States, including Indiana; accept payment in U.S. dollars; and, on information and belief,

1

sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks and/or unauthorized copies of Plaintiff's federally registered copyrighted works, including the distinctive characters embodied therein (collectively, the "Unauthorized Products") to residents of Indiana. Each of the Defendants is committing tortious acts in Indiana, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Indiana.

## II.    INTRODUCTION

3.    Plaintiff filed this case to prevent e-commerce store operators who trade upon Plaintiff's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and infringement of its registered copyrighted works, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been, and continues to be, irreparably damaged through consumer confusion and dilution of its valuable trademarks and infringement of its copyrighted works because of Defendants' actions and therefore seeks injunctive and monetary

relief.

## III.    THE PARTIES

4.    Plaintiff, Sesame Workshop, was formed in 1970 and is a global impact nonprofit organization with its principal place of business in New York and is the owner of the trademarks and copyrights asserted in this action.

5.    Sesame Workshop, originally known as the Children's Television Workshop, was founded by Joan Ganz Cooney and Lloyd Morrisett with the goal of producing educational television for children. Sesame Workshop's mission is to help children everywhere grow smarter, stronger, and kinder, and to reach families in more than 150 countries with playful early learning empower each generation to build a better world. Alongside educational television shows, digital content, and print materials, Sesame Workshop also engages in philanthropic funded initiatives and international outreach. However, the organization is best known for creating the iconic children's program *Sesame Street*, which premiered on November 10, 1969.

6.    A longtime favorite of children and adults, and a pioneer of children's television, *Sesame Street* is a popular series that combines live-action, comedy, animation, and puppetry. Set on a fictional urban street, the program features a diverse cast of human characters and beloved Muppets, such as Elmo, Big Bird, and Cookie Monster. *Sesame Street* addresses a full gamut of age-appropriate lessons including literacy, numeracy, healthy habits, self-expression, empathy, and friendship. Additionally, the program promotes cultural diversity and inclusivity, promoting respect for different backgrounds and perspectives. Through its engaging characters and storytelling, *Sesame Street* fosters both cognitive and social growth in early childhood.

7.    Over fifty years later, *Sesame Street* remains one of Plaintiff's most popular shows. *Sesame Street* garners over 15 million viewers every month in the United States, across all

touchpoints, including broadcast, streaming platforms, and on Plaintiff's YouTube channel. Moreover, *Sesame Street* has been translated into 70 languages and has over 150 million viewers around the world in 150 countries. Some of the characters and character names made famous by *Sesame Street* include, but are not limited to:[1]



| Elmo | |
| --- | --- |
| **Big Bird** | |

---

[1] The characters contained within the table are not an exhaustive list of the characters embodied in Plaintiff's copyrighted works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Plaintiff's copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **Cookie Monster** |  |
| **Grover** | |
| **Bert** | |



| Ernie | |
|---|---|

8.      Since the release of the pilot, *Sesame Street* has amassed a large and dedicated fan base of both children and adults. As such, the program's ability to captivate and engage its viewers has led to widespread acclaim from viewers and critics alike. Notably, *Sesame Street* has (1) been inducted in the Television Hall of Fame in 1990; (2) won two Peabody Awards, an award held in high esteem within the media industry; (3) won several Grammy Awards for its original songs and albums related to *Sesame Street*; and (4) won over two hundred Emmy Awards—more than any other television show. These achievements reflect the show's recognition and influence on educational television.

9.      Before Defendants' acts described herein, Plaintiff undertook a significant, ongoing licensing program resulting in the launch of numerous products bearing its famous SESAME STREET mark. Plaintiff has also registered a multitude of works related to the *Sesame Street* series and the characters embodied therein with the United States Copyright Office (the "Sesame Street Copyrighted Works"). The registrations include but are not limited to: "Elmo." (U.S. Copyright Registration No. VA0001693455), "Big Bird." (U.S. Copyright Registration No. VA0001693460), "Cookie Monster." (US Copyright Registration No. VA0001693456), "Grover." (U.S. Copyright Registration No. VA0001693450), "Bert." (U.S. Copyright Registration No. VA0001693461), and

"Ernie." (U.S. Copyright Registration No. VA0001693452) all issued by the Registrar of Copyrights on January 1, 2009.

10.    The Sesame Street Copyrighted Works are registered with the United States Copyright Office. True and correct copies of the records from the U.S. Copyright Office website for the Sesame Street Copyrighted Works are attached hereto as **Exhibit 1**. The Sesame Street Copyrighted Works embody the distinctive characters found in paragraph 7 above.

11.    Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and display the Sesame Street Copyrighted Works to the public. Since first publication, the Sesame Street Copyrighted Works have been used on Plaintiff's licensed products and are featured on Plaintiff's official websites, https://sesameworkshop.org/ and https://sesamestreet.org/.

12.    Plaintiff's authorized licensees market and sell a variety of Sesame Street branded products, including apparel such as shirts, sweatshirts, children's and infants' clothing; accessories such as backpacks and hats; books; drinkware; pillows and pillowcases; plushies; and toys (collectively, "Sesame Street Products").

13.    Sesame Street Products have become enormously popular and even iconic, driven in part by the quality standards and innovative designs of Plaintiff's authorized licensees. Among the purchasing public, Sesame Street Products are instantly recognizable as such. The Sesame Street brand has become a global success and Sesame Street Products are among the most recognizable in the world. Sesame Street Products are distributed and sold to consumers by Plaintiff's authorized licensees, including PBS, Carters, Hanna Andersson, Hot Topic, Macy's, and Target, through both websites and physical retail storefronts.

14.    Plaintiff has continuously used the SESAME STREET trademark, and other

trademarks, and has continuously licensed products for sale under its trademarks (the "Sesame Street Trademarks"). As a result of this continuous use as well as the fame and popularity of *Sesame Street*, strong common law trademark rights have amassed in the Sesame Street Trademarks. Plaintiff's use of the marks has also built substantial goodwill in the Sesame Street Trademarks. The Sesame Street Trademarks are famous marks and valuable assets of Plaintiff. Sesame Street Products typically include one of the Sesame Street Trademarks and/or Sesame Street Copyrighted Works.

15.    The Sesame Street Trademarks are registered with the United States Patent and Trademark Office and is included below.

| Registration Number | Trademark | Registration Date | Goods and Services |
|---|---|---|---|
| 2,891,251 | SESAME STREET | Oct. 5, 2004 | For: music boxes, musical instruments in class 015. |
| 3,470,662 | SESAME STREET | Jul. 22, 2008 | For: Audio recordings, compact discs, multimedia software recorded on CD-ROMs, video recordings, DVDs, downloadable recordings of television programs and cinematographic film for exhibition all featuring educational themes and entertainment directed to children, parents and families; computer game programs, cartridges, discs and software; downloadable multimedia content, namely, music, graphics, audio and video recordings featuring educational themes and entertainment directed to children, parents and families, interactive games all for use on computers, cell phones and other mobile devices; computers and computer peripherals, computer peripheral mouse pads; CD players; radios; radios incorporating clocks; walkie-talkies; decorative refrigerator |

|  |  |  | magnets; sunglasses; eyeglasses in class 009.<br><br>For: Printed materials, namely, books, magazines and newsletters all featuring educational themes and entertainment directed to children, parents and families; coloring books; comic books; teachers' guides featuring educational themes and entertainment directed to children, parents and families; address books; personal organizers; autograph books; baby books; birthday books; diaries; bookmarks; printed charts; photo albums; stationery; writing paper; writing tablets; note cards; notebooks; ring binders; notepads; folders; document portfolios; stationery-type portfolios; postcards; greeting cards; pens; pencils; pencil cases; pencil sharpeners; envelopes; erasers; rubber stamps; stamp pads; chalk; construction paper, crayons, markers, modeling clay, modeling clay sets comprised of clay and plastic sculpting tools sold as a unit, drawing sets comprised of paper and pencils; arts and crafts paint kits; printing sets consisting of decorative stamps and paper, stencils, easels, storage boxes; calendars; posters; stickers; paper door knob hangers; paper gift tags; gift wrapping paper; paper cake decorations; paper centerpieces; paper bags; paper identification tags; paper napkins; paper party decorations; paper party favors; paper party hats; paper party invitations; paper place mats; paper tablecloths; facial tissue, paper baby bibs; disposable diapers; disposable training pants in class 016.<br><br>For: Clothing for men, women, children and infants, namely, shirts, sweatshirts, tank tops, t-shirts, pants, |
|---|---|---|---|

loungewear, overalls, jeans, shorts, vests, socks, leggings, sleepwear, infants' sleepers, pajamas, nightgowns, robes, dresses, jumpers, skirts, sweaters, underwear, non-disposable cloth training pants, swimwear, playsuits, baby bibs not made of paper, headwear, footwear, mittens, gloves, coats, ponchos, snowsuits, smocks, Halloween and Masquerade costumes; play costumes for use in role-playing games in Class 025.

For: Toys, games and playthings, namely, plush toys, dolls, doll clothing and costumes, doll accessories, hobby craft kits comprising painting sets, action skill games, board games, card games, manipulative puzzles, electronic learning toys, toy film cartridges and viewers, squeeze toys, bath toys, beach toys, multiple activity baby toys, infant toys, baby rattles, baby rattles incorporating teething rings, puppets, bean bags, pull toys, ride-on toys, toy vehicles, toy scooters, sports balls, beach balls, playground balls, toy foam balls, wind up toys, balloons, toy building blocks, construction toys, toy shovels, toy pails, toys designed to be attached to car seats, cribs and high chairs, toy musical instruments, toy telephones, toy music boxes; toy building structures, toy action figures and accessories therefor, cases for play accessories, toy environments for use with action figures, play sets for action figures, toy tools; play costume masks; play doll costumes, inflatable swimming pools, party favors in the nature of small toys; Christmas tree decorations, ornaments in class 028.

For: Streaming of audio and video material on the Internet in class 038.

| | | | |
|---|---|---|---|
| | | | For: Ongoing television program featuring educational themes and entertainment directed to children, parents and families; amusement parks; live theatrical performances; providing online information featuring educational themes and entertainment directed to children, parents and families; providing computer games and activities for children, parents, and families via the internet, all featuring educational themes and entertainment directed to children, parents and families; entertainment services, namely, providing pod casts and web casts, all featuring educational themes and entertainment directed to children, parents and families; providing on-line non-downloadable interactive video games and multimedia computer games in class 041. |
| 3,479,148 |  | Aug. 5, 2008 | For: Baby wipes, toothpaste, gum cleaner in the nature of gum paste, body soap, body wash, bubble bath, hand soap, skin lotion, baby oil, hair care preparations, shampoo in class 003.<br><br>For: Adhesive bandages, baby food in class 005.<br><br>For: Tableware and cutlery, namely, forks and spoons; scissors in class 008.<br><br>For: Baby bottles, pacifiers for babies, teethers for babies, thermometers for medical purposes; droppers for administering medicine sold empty in class 010.<br><br>For: Lamps, electric night-lights, flashlights, Christmas tree lights in class 011. |

For: Automotive accessories, namely, vehicle seat covers in class 012.

For: Jewelry, watches, clocks in class 014.

For: Umbrellas; bags, namely, diaper bags, sports bags, gym bags, knapsacks, backpacks, wallets, coin purses, water and baby bottle bags, beach bags, book bags, school bags, diaper bags, duffel bags, luggage, traveling bags, pocketbooks, handbags, purses, tote bags, carry-alls; baby backpacks, infant carriers worn on the body, baby carriers worn on the body in class 018.

For: Furniture for babies and children, namely, tables, chairs, work benches, step stools, non-metal key rings; picture frames; drinking straws; sleeping bags; pillows in class 020.

For: Housewares, kitchenware, dinnerware and beverage ware of paper, plastic, ceramic, glass or earthenware, namely, dishes, platters, plates, bowls, cups, saucers, egg cups, mugs, tumblers and drinking glasses; infant cups; water bottles sold empty; insulated and non-insulated lunch boxes, insulated and non-insulated lunch pails, insulated beverage containers, insulated bottles for beverages; waste baskets; cookie jars; statuettes and figurines of glass, porcelain; non-metal savings piggy banks; baby bathtubs, potties for children, toothbrushes, hair brushes, hair combs; bath sponges in class 021.

For: Textile and textile goods, namely, shower curtains, window curtains, plastic place mats; bath linens, namely, bath towels, hooded towels,

| | | | |
|---|---|---|---|
| | | | wash cloths; bed linens, namely, bed sheets, crib sheets, bed skirts, pillow cases, pillow shams, quilts, coverlets, bedspreads, bed blankets, crib blankets, receiving blankets, comforters, comforter covers in class 024.<br><br>For: Rugs, wallpaper, floor mats in class 027.<br><br>For: Dairy products excluding ice cream, ice milk, and frozen yogurt, milk products excluding ice cream, ice milk, and frozen yogurt, yogurt, applesauce, fruit-based snack food, processed vegetables, canned fruit, processed fruit in class 029.<br><br>For: Breakfast cereal, cakes, cookies, crackers, ready to eat, cereal derived breakfast food bars, pasta, cereal-based, granola-based snack bars in class 30.<br><br>For: Fruit juices in class 032. |
| 3,603,326 | SESAME STREET | Apr. 7, 2009 | For: Fresh fruit in class 031. |
| 1,025,725 | SESAME STREET | Nov. 25, 1975 | For: calendars, posters, children's magazines, coloring books in class 016. |
| 1,027,429 | SESAME STREET | Dec. 16, 1975 | For: toys, packaged amusement and educational games, puppets, puzzles in class 028. |
| 1,082,622 | SESAME STREET | Jan. 17, 1978 | For: comforters, blankets, curtains and sheets in class 024. |
| 1,082,535 | SESAME STREET | Jan. 17, 1978 | For: umbrellas and handbags in class 018. |
| 1,110,963 | SESAME STREET | Jan. 9, 1979 | For: children's clothing-namely, jeans, slacks, shorts, t-shirts, polo shirts, blouses, dresses, jumpers, sleepwear, robes, warm-up suits, sweat shirts, rainwear, sweaters, scarves, hats, caps, mittens, snowsuits, shoes sneakers, boots, slippers, smocks, and infants |

| | | | |
|---|---|---|---|
| | | | sleepers, swimwear, playsuits, and bibs in class 025. |
| 1,240,243 | SESAME STREET | May 31, 1983 | For: Fiction and Non-Fiction Books for Children, Charts, Greeting Cards, Paper Gift Tags and Book Marks in class 016. |
| 1,895,976 | SESAME STREET | May 30, 1995 | For: computer programs and software to entertain and educate children in class 009.<br><br>For: on-line computer services providing access to children's games and activities and educational materials in class 042. |
| 2,248,851 | SESAME STREET | Jun. 01, 1999 | For: pre-recorded video tapes featuring entertainment and information of general interest to children and parents in class 009. |
| 2,711,703 | SESAME WORKSHOP | Apr. 29, 2003 | For: Video recordings, audio recordings, video discs, all featuring information and entertainment of general interest to children, parents and families in class 009.<br><br>For: Books featuring information and education for children, parents and families, address books, baby books, in class 016.<br><br>For: children's and infant's clothing, namely, sleepers, sleepwear, loungewear, in class 025.<br><br>For: Games and toys, namely, manipulative games, plush toys, squeeze toys, toy figures, bath toys, beach toys, puppets, dolls, in class 028.<br><br>For: Entertainment in the nature of ongoing television series featuring information and entertainment directed to children, parents and families; entertainment, namely, live theatrical performances directed to children, parents and families; |

| | | | |
|---|---|---|---|
| | | | amusement parks; providing information and entertainment of general interest to children, parents and families via the internet in class 041. |
| 954,372 | BIG BIRD | Mar. 06, 1973 | For: PUPPETS in class 028. |
| 1,056,651 | BERT | Jan. 18, 1977 | For: DOLLS in class 028. |
| 959,284 | COOKIE MONSTER | May 22, 1973 | For: PUPPETS in class 028. |
| 1,046,044 | COOKIE MONSTER | Aug. 10, 1976 | For: DOLLS in class 028. |
| 1,046,043 | ERNIE | Aug. 10, 1976 | For: DOLLS in class 028. |
| 1,056,652 | OSCAR THE GROUCH | Jan. 18, 1977 | For: DOLLS in class 028. |
| 3,942,072 | ABBY CADABBY | Apr. 5, 2011 | For: Printed materials, namely, books featuring educational themes and entertainment directed to children, parents and families; story books, children's books, paper cake decorations, paper napkins, paper party decorations, paper party invitations in class 016.<br><br>For: Halloween costumes in class 025.<br><br>For: Toys, games and playthings, namely, plush toys, dolls, play costumes, masquerade and costumes in class 028.<br><br>For: Ongoing television program featuring educational themes and entertainment directed to children, parents and families; providing online information featuring educational themes and entertainment directed to children, parents and families in class 041. |
| 4,739,270 | ABBY CADABBY | May 19, 2015 | For: CDs featuring children's entertainment and children's educational topics for the benefit of children, parents and families; mouse pads; pre-recorded electronic and digital media featuring children's |

| | | | |
|---|---|---|---|
| | | | entertainment, children's education in class 009.<br><br>For: Shirts, t-shirts, tank tops, pants, jackets, socks, leggings, sleepwear, loungewear, dresses, underwear, swim wear, head wear, footwear in class 025.<br><br>For: Toys, games and playthings, namely, manipulative puzzles, balloons in class 028. |
| 3,972,337 |  | Jun. 7, 2011 | For: Plush toys; interactive plush toys sold as a unit with DVDs in class 028. |
| 2,646,137 | ELMO'S WORLD | Nov. 5, 2002 | For: Video recordings, video discs, all featuring information and entertainment of general interest to children, parents and families in class 009.<br><br>For: Books featuring information and education for children, parents and families in class 016.<br><br>For: Games and toys, namely, plush toys, squeeze toys, toy figures, multiple activity baby toys, dolls, baby rattles in class 028. |
| 3,319,583 | FELIZ, SANO, LISTO PARA LA ESCUELA | Oct. 23, 2007 | For: Printed materials, namely newsletters, brochures, and pamphlets featuring educational and entertainment material directed to children, parents and families in class 016. |
| 3,665,227 | HÁBITOS SALUDABLES PARA TODA LA VIDA | Aug. 04, 2009 | For: Printed materials, namely, books featuring educational themes and entertainment for children; children's activity books in class 016. |
| 7,006,944 | FOLEY & FRIENDS | Mar. 21, 2023 | For: Downloadable podcasts in the field of children's education and entertainment; audiobooks in the field of children's education and entertainment; audio recordings |

| | | | |
|---|---|---|---|
| | | | featuring children's education and entertainment in class 009.<br><br>For: Entertainment and educational services, namely, providing podcasts in the field of children's education and entertainment; providing online information in the field of children's education and entertainment in class 041. |
| 3,633,098 | HAPPY HEALTHY MONSTERS | Jun. 2, 2009 | For: DVDs featuring educational and entertainment themes directed to children, parents and families in class 009.<br><br>For: Printed materials, namely, books, all featuring information and entertainment for children, parents and families; story books, children's books, children's activity books in class 016. |
| 3,110,646 | HAPPY, HEALTHY, READY FOR SCHOOL | Jun. 27, 2006 | For: Printed materials, namely newsletters, brochures, and pamphlets featuring educational and entertainment material directed to children, parents and families in class 016. |
| 3,604,268 | HEALTHY HABITS FOR LIFE | Apr. 7, 2009 | For: Pre-recorded musical sound recordings, audio recordings, musical video recordings, video recordings, video discs, DVDs, all featuring educational themes and entertainment for children in class 009.<br><br>For: Printed materials, namely, books and magazines featuring educational themes and entertainment for children; story books, children's books, children's activity books, and coloring books; notebooks and spiral notepads in class 016. |
| 5,871,312 | HELPING KIDS GROW SMARTER, STRONGER, AND KINDER | Oct. 1, 2019 | For: Promoting public awareness of issues concerning children's education and development in class 035. |

| | | | |
|---|---|---|---|
| | | | For: Educational and entertainment services, namely, ongoing television programs in the field of children's education and entertainment; education and entertainment services, namely, ongoing multimedia programs in the field of children's education and entertainment distributed via various platforms across multiple forms of transmission media; entertainment services in the nature of development, creation, production, distribution, and post-production of multimedia entertainment content; providing online information in the field of children's education and entertainment in class 041. |
| 3,825,629 | LET'S GET READY! PLANNING TOGETHER FOR EMERGENCIES | Jul. 27, 2010 | For: Pre-recorded DVDs containing educational software featuring instruction in the field of emergency preparedness directed to children, parents, families and caregivers in class 009.<br><br>For: Printed publications, namely, magazines, children's activity books and booklets, directed to children, parents, families and caregivers in the field of emergency preparedness in class 016. |
| 4,511,604 | LITTLE CHILDREN BIG CHALLENGES | Apr. 8, 2014 | For: Video recordings, and DVDs, all featuring educational themes and entertainment directed to children, parents and families; downloadable electronic books, booklets, pamphlets, and newsletters featuring educational themes and entertainment directed to children, parents and families; downloadable multimedia content, namely, interactive games for use on computers, cell phones and other mobile devices in class 009.<br><br>For: Printed publications, namely, books, booklets, pamphlets, all featuring educational themes and |

| | | | entertainment directed to children, parents and families; children's activity books; educational kits sold as a unit in the fields of resiliency and perseverance consisting primarily of booklets and pamphlets and also including video recordings and DVDs in class 016.<br><br>For: Providing online information featuring educational themes and entertainment directed to children, parents and families; providing online non-downloadable, books, booklets, pamphlets, all featuring educational themes and entertainment directed to children, parents and families; providing computer games and activities for children, parents and families via the internet, all featuring educational themes and entertainment directed to children, parents and families; entertainment services, namely, providing podcasts and webcasts, all featuring educational themes and entertainment directed to children, parents and families; providing online non-downloadable interactive video games and multimedia computer games; providing a website featuring non-downloadable videos featuring educational themes and entertainment; community outreach services provided to children, parents and families, namely, providing information, news and commentary in the fields of resiliency and perseverance in class 041. |
|---|---|---|---|
| 2,994,747 | ORGANIC LETTER OF THE DAY COOKIES | Sep. 13, 2005 | For: Cookies in class 030. |
| 3,291,435 | PLAZA SESAMO | Sep. 11, 2007 | For: Pre-recorded video tapes, and digital video discs featuring educational information and entertainment for children and parents, |

| | | | |
|---|---|---|---|
| | | | and recordings of television programs for children and parents in class 009.<br><br>For: Fiction and non-fiction books, all featuring information and entertainment of general interest to children and parents in class 016.<br><br>For: Toys, namely, plush toys, puzzles, namely, jigsaw puzzles, puppets in class 028. |
| 2,830,142 | SESAME BEGINNINGS | Apr. 06, 2004 | For: Books, for children, parents and families, story books, children's books, children's activity books, in class 016. |
| 3,437,796 |  | May 27, 2008 | For: digital video discs featuring educational themes and entertainment directed to children, parents, and families in class 009. |
| 3,946,809 | SHALOM SESAME | Apr. 19, 2011 | For: video recordings featuring educational themes and entertainment directed to children, parents and families in class 009. |
| 2,992,170 | SUNNY DAYS SNACK BARS | Sep. 06, 2005 | For: grain-based, cereal-based, rice-based, and granola-based snack bars in class 030. |
| 3,478,191 | TALK, LISTEN, CONNECT | Jul. 29, 2008 | For: Audio recordings, video recordings, and DVDs featuring entertainment and educational information on issues related to military service and deployment directed to children, parents, families, and caregivers in class 009.<br><br>For: Printed materials, namely, magazines, and booklets featuring entertainment and educational information on issues related to military service and deployment directed to children, parents, families, and caregivers in class 016.<br><br>For: Educational services, namely, providing on-line programs in the fields of military service and deployment directed to children, |

| | | | |
|---|---|---|---|
| | | | parents, families, and caregivers using on-line activities, and printable materials distributed therewith in class 041. |
| 6,521,804 | THE NOT-TOO-LATE SHOW WITH ELMO | Oct. 12, 2021 | For: Audio and video recordings featuring children's education and entertainment in class 009.<br><br>For: Clothing, namely, tops, loungewear and headwear in class 025.<br><br>For: Entertainment and educational services, namely, ongoing television program in the field of children's education and entertainment; Entertainment and educational services, namely, ongoing multimedia programs in the field of children's education and entertainment distributed via various platforms across multiple forms of transmission media; Entertainment and educational services, namely, ongoing web series featuring children's education and entertainment; Providing online information in the field of children's education and entertainment in class 041. |
| 7,026,248 | THE NOT-TOO-LATE SHOW WITH ELMO | Apr. 11, 2023 | For: Downloadable multimedia content, namely, images, music, audio and video recordings for mobile phones in the field of children's education and entertainment in class 009.<br><br>For: Clothing, namely, underwear and sleepwear in class 025.<br><br>For: Providing podcasts and webcasts in the field of children's education and entertainment; presentation of live show performances in class 041. |
| 2,140,480 | TICKLE ME | Mar. 3, 1998 | For: toys, namely, plush toys in class 028. |

| 4,471,490 | WATCH ME GROW | Jan. 21, 2014 | For: Clothing for children and infants, namely, shirts, sweatshirts, tank tops, T shirts, pants, loungewear, overalls, shorts, vests, leggings, sleepwear, infants' sleepers, dresses, jumpers, skirts, sweaters, swimwear, playsuits, baby bibs not made of paper in Class 025. |
|---|---|---|---|

16.     The U.S. registrations for the Sesame Street Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Sesame Street Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Sesame Street Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the Sesame Street Trademarks are attached hereto as **Exhibit 2**.

17.     The Sesame Street Trademarks are exclusive to Plaintiff and are displayed extensively on Sesame Street Products and in marketing and promotional materials. The Sesame Street Trademarks are also distinctive when applied to Sesame Street Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Plaintiff has ensured that its products bearing the Sesame Street Trademarks are manufactured to the highest quality standards.

18.     The Sesame Street Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of Sesame Street Products have enabled the Sesame Street brand to achieve widespread recognition and fame and have made the Sesame Street Trademarks some of the most well-known marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Sesame Street brand have made the Sesame Street Trademarks valuable assets of Plaintiff.

19.     Products bearing the Sesame Street Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff's authorized licensees. Plaintiff's authorized licensees, including PBS, Carters, Hanna Andersson, Hot Topic, Macy's, and Target, have marketed and promoted, and continue to market and promote, the Sesame Street Trademarks to consumers through both websites and physical retail storefronts.

20.     Plaintiff's authorized licensees have expended substantial time, money, and other resources in advertising and promoting the Sesame Street Trademarks. Specifically, Plaintiff's authorized licensees have expended substantial resources in advertising, promoting, and marketing products featuring the Sesame Street Trademarks. Sesame Street Products have also been the subject of extensive unsolicited publicity resulting from consumers' confidence that Sesame Street Products are of high quality, and trustworthy. As a result, products bearing the Sesame Street Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Plaintiff. Sesame Street Products have become among the most popular of their kind in the world. The Sesame Street Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Sesame Street Trademarks is of immeasurable value to Plaintiff.

21.     Sesame Street Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Sesame Street brand.

22.     Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure

17(b).

23.     On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV.    DEFENDANTS' UNLAWFUL CONDUCT

24.     The success of the Sesame Street brand has resulted in significant counterfeiting of the Sesame Street Trademarks and infringement of the Sesame Street Copyrighted Works. Because of this, Plaintiff has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), Dhgate.com ("DHGate"), and eBay Inc. ("eBay"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a report prepared for The Buy Safe America Coalition, most infringing products now come through international mail and express courier services because of increased sales from foreign online infringers. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States*, prepared by John Dunham & Associates (**Exhibit 3**).

25.     Because the infringing products sold by offshore online infringers do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time

jobs in the wholesale and retail sectors alone in 2020. *Id.* When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of infringing products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. *Id.* Additionally, it is estimated that the importation of infringing goods cost the United States government nearly $7.2 billion in personal and business tax revenues in the same period. *Id.*

26.     Furthermore, online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 4**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 5**, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Infringers hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. **Exhibit 5** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 5** at p. 39. Further, "[e]-commerce platforms

create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringing products] and [infringers]." **Exhibit 4** at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the infringer] to reappear under a new false name and address in short order." *Id.* at p. 161.

27.    Defendants have targeted sales to Indiana residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Indiana; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Indiana.

28.    Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Alipay, Amazon Pay, PayPal, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the Sesame Street Trademarks and/or to copy or distribute the Sesame Street Copyrighted Works, and none of the Defendants are authorized retailers of Sesame Street Products.

29.    Many Defendants also deceive unknowing consumers by using the Sesame Street Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Sesame Street Products. Other e-commerce stores operating under the Seller Aliases omit using the Sesame Street Trademarks in the item title to evade enforcement efforts while using strategic item titles and

descriptions that will trigger their listings when consumers are searching for Sesame Street Products.

30.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

31.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

32.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

33.     E-commerce store operators like Defendants communicate with each other through

QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

34.     Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

35.     Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used, and continue to use the Sesame Street Trademarks and/or copies of the Sesame Street Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Indiana over the Internet.

36.     Defendants' unauthorized use of the Sesame Street Trademarks and/or Sesame Street Copyrighted Works in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products into the United States, including Indiana, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

37.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38.     This is a trademark infringement action against certain Defendants[2] based on their unauthorized use in commerce of counterfeit imitations of the Sesame Street Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Sesame Street Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Sesame Street Products offered, sold, or marketed under the Sesame Street Trademarks.

39.     Certain Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Sesame Street Trademarks without Plaintiff's permission.

40.     Plaintiff owns the Sesame Street Trademarks. Plaintiff's United States registrations for the Sesame Street Trademarks are in full force and effect. Upon information and belief, certain Defendants have knowledge of Plaintiff's rights in the Sesame Street Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of the Sesame Street Trademarks. Those Defendants' willful, intentional, and unauthorized use of the Sesame Street Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

41.     Certain Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

42.     Plaintiff has no adequate remedy at law, and if certain Defendants' actions are not

---

[2] Count I applies to all Defendants who infringed the Sesame Street Trademarks, as outlined in Schedule A attached hereto.

enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Sesame Street Trademarks.

43.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by certain Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

44.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

45.     Certain Defendants'[3] promotion, marketing, offering for sale, and/or sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of the Unauthorized Products by Plaintiff.

46.     By using the Sesame Street Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, certain Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

47.     Certain Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

48.     Plaintiff has no remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Sesame Street brand if certain Defendants' actions are not enjoined.

---

[3] Count II applies to all Defendants who infringed the Sesame Street Trademarks, as outlined in Schedule A attached hereto.

**COUNT III**
**COPYRIGHT INFRINGEMENT OF UNITED STATES COPYRIGHT**
**REGISTRATIONS (17 U.S.C. §§ 106 and 501)**

49.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

50.     The Sesame Street Copyrighted Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*.

51.     Plaintiff owns the Sesame Street Copyrighted Works. Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for the Sesame Street Copyrighted Works. The Sesame Street Copyrighted Works are protected by copyright registration numbers which were duly issued to Plaintiff by the United States Copyright Office. At all relevant times, Plaintiff has been, and still is, the owner of all rights, title, and interest in the Sesame Street Copyrighted Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

52.     The Sesame Street Copyrighted Works are published on the Internet and available to Defendants online. As such, Defendants had access to the Sesame Street Copyrighted Works via the Internet.

53.     Without authorization from Plaintiff, or any right under the law, certain Defendants[4] have deliberately copied, displayed, distributed, reproduced, and/or made derivative works incorporating the Sesame Street Copyrighted Works on the e-commerce stores operating under the Seller Aliases and the corresponding Unauthorized Products. Certain Defendants' derivative works are virtually identical to and/or are substantially similar to the look and feel of the Sesame Street Copyrighted Works. Such conduct infringes and continues to infringe the

---

[4] Count III applies to all Defendants who infringed the Sesame Street Copyrighted Works, as outlined in Schedule A attached hereto.

Sesame Street Copyrighted Works in violation of 17 U.S.C. § 501(a) and 17 U.S.C. §§ 106(1)–(3), (5).

54.     Certain Defendants reap the benefits of the unauthorized copying and distribution of the Sesame Street Copyrighted Works in the form of revenue and other profits that are driven by the sale of Unauthorized Products.

55.     Certain Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Unauthorized Products that capture the total concept and feel of the Sesame Street Copyrighted Works, including the distinctive characters embodied therein.

56.     On information and belief, the certain Defendants' infringement has been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

57.     Certain Defendants, by their actions, have damaged Plaintiff in an amount to be determined at trial.

58.     Certain Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a preliminary and permanent injunction prohibiting further infringement of the Sesame Street Copyrighted Works.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a.  using the Sesame Street Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a Sesame Street Product or is not authorized by Plaintiff to be sold in connection with the Sesame Street Trademarks;

b.  reproducing, distributing copies of, making derivative works of, or publicly displaying the Sesame Street Copyrighted Works in any manner without the express authorization of Plaintiff;

c.  passing off, inducing, or enabling others to sell or pass off any products as Sesame Street Products or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Sesame Street Trademarks and/or Sesame Street Copyrighted Works;

d.  committing any acts calculated to cause consumers to believe that Defendants' Unauthorized Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e.  further infringing the Sesame Street Trademarks and/or Sesame Street Copyrighted Works and damaging Plaintiff's goodwill; and

f.  manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of the Sesame Street

Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof and/or which bear the Sesame Street Copyrighted Works;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including without limitation, any websites and/or online marketplace platforms like AliExpress, Amazon, DHgate, and eBay shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Sesame Street Trademarks and/or Sesame Street Copyrighted Works;

3) That certain Defendants account for and pay to Plaintiff all profits realized by those Defendants by reason of those Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Sesame Street Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Sesame Street Trademarks;

5) As a direct and proximate result of certain Defendants' infringement of the Sesame Street Copyrighted Works, Plaintiff is entitled to damages as well as those Defendants' profits, pursuant to 17 U.S.C. § 504(b);

6) Alternatively, and at Plaintiff's election prior to any final judgment being entered, Plaintiff is entitled to the maximum amount of statutory damages provided by law, $150,000 per work infringed pursuant to 17 U.S.C. § 504(c), or for any other such amount as may be proper pursuant to 17 U.S.C. § 504(c);

7) Plaintiff is further entitled to recover its attorneys' fees and full costs for bringing this action pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a); and

8) Award any and all other relief that this Court deems just and proper.

Dated this 15th day of August 2025.          Respectfully submitted,

/s/ Martin F. Trainor
Martin F. Trainor
Sydney Fenton
Alexander Whang
TME Law, P.C.
10 S. Riverside Plaza
Suite 875
Chicago, Illinois 60606
708.475.1127
martin@tme-law.com
sydney@tme-law.com
alexander@tme-law.com

*Counsel for Plaintiff Sesame Workshop*