IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SESAME WORKSHOP,<br><br>                            Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>                            Defendants. | Case No. 25-cv-00375<br><br>**Magistrate Judge John E Martin** |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiff Sesame Workshop ("Plaintiff") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, and expedited discovery.

i

# Table of Contents

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.  STATEMENT OF FACTS .......................................................................................... 2

    a.  Plaintiff's Intellectual Property and Genuine Products ....................................... 2

    b.  Defendants' Unlawful Activities ........................................................................ 3

III. ARGUMENT ............................................................................................................. 4

    a.  Standard for Temporary Restraining Order and Preliminary Injunction ............. 5

    b.  Plaintiff Will Likely Succeed on the Merits ....................................................... 6

        i.   *Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting and False Designation of Origin Claims* ............................................................. 6

        ii.  *Plaintiff is Likely to Succeed on Its Copyright Infringement Claim* ............. 8

    c.  There Is No Adequate Remedy At Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ...................................................................... 9

    d.  The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest is Served by Entry of the Injunction ........................................................................................ 10

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE ....................................... 12

    a.  A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Sesame Street Trademarks and/or the Sesame Street Copyrighted Works is Appropriate ................................................................... 12

    b.  Preventing the Fraudulent Transfer of Assets Is Appropriate ............................ 13

    c.  Plaintiff Is Entitled to Expedited Discovery ..................................................... 14

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ...................................... 15

VI.  CONCLUSION ....................................................................................................... 15

**MEMORANDUM OF LAW**

I.     **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is requesting temporary *ex parte* relief based on an action for trademark infringement and counterfeiting, false designation of origin, and/or copyright infringement against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling products using infringing and counterfeit versions of Plaintiff's federally registered trademarks and/or unauthorized copies of Plaintiff's federally registered copyrighted works (collectively, the "Unauthorized Products") through at least the fully interactive e-commerce stores operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases").

Defendants run a sophisticated operation and have targeted sales to Indiana residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Indiana residents can purchase Unauthorized Products. The e-commerce stores operating under the Seller Aliases share identifiers establishing a logical relationship between them. Defendants take advantage of a set of circumstances, including the anonymity and mass reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks and/or infringement of its registered copyrights, as well as to protect unknowing consumers from purchasing Unauthorized Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests this Court to issue

1

an *ex parte* Temporary Restraining Order.

## II. STATEMENT OF FACTS
### a. Plaintiff's Intellectual Property and Genuine Products

Plaintiff, Sesame Workshop, was formed in 1970 and is a global impact nonprofit organization with its principal place of business in New York and is the owner of the trademarks and copyrights asserted in this action. *See* Declaration of Paul Varley (the "Varley Declaration") at ¶ 3. Sesame Workshop, originally known as the Children's Television Workshop, was founded by Joan Ganz Cooney and Lloyd Morrisett with the goal of producing educational television for children. *Id*. at ¶ 4. The organization is best known for creating the iconic children's program *Sesame Street*, which premiered on November 10, 1969. *Id*. Additional facts regarding Plaintiff and *Sesame Street* are incorporated in Paragraphs 3-11 of the Varley Declaration. *Id.* at ¶¶ 3-11.

Before Defendants' acts described herein, Plaintiff undertook a significant, ongoing licensing program resulting in the launch of numerous products bearing its famous SESAME STREET mark. *Id*. at ¶ 8. Plaintiff has also registered a multitude of works related to the Sesame Street series and the characters embodied therein with the United States Copyright Office (the "Sesame Street Copyrighted Works"). *Id.*

Plaintiff's authorized licensees market and sell a variety of Sesame Street branded products, including apparel such as shirts, sweatshirts, children's and infants' clothing; accessories such as backpacks and hats; books; drinkware; pillows and pillowcases; plushies; and toys (collectively, "Sesame Street Products"). *Id*. at ¶ 10. Sesame Street Products have become enormously popular and even iconic, driven in part by the quality standards and innovative designs of Plaintiff's authorized licensees. *Id.* at ¶ 11. Among the purchasing public, Sesame Street Products are instantly recognizable as such. *Id.* The Sesame Street brand has become a global success and Sesame Street Products are among the most recognizable in the world. *Id.* Sesame Street Products

are distributed and sold to consumers by Plaintiff's authorized licensees, including PBS, Carters, Hanna Andersson, Hot Topic, Macy's, and Target, through both websites and physical retail storefronts. *Id.*

Plaintiff has continuously used the SESAME STREET trademark, and other trademarks, and has continuously licensed products for sale under its trademarks (the "Sesame Street Trademarks"). *Id.* at ¶ 12. The Sesame Street Trademarks are registered with the United States Patent and Trademark Office. *Id.* at ¶ 13. The Sesame Street Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. *Id.* The Sesame Street Trademarks are distinctive when applied to Sesame Street Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. *Id.* at ¶ 14. The Sesame Street Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Sesame Street Trademarks pursuant to 15 U.S.C. § 1057(b). The Sesame Street Trademarks are also famous marks, as that term is used in 15 U.S.C. § 1125(c)(1). *Id.* at ¶ 15.

  b. <u>Defendants' Unlawful Activities</u>

The success of the Sesame Street brand has resulted in significant counterfeiting of the Sesame Street Trademarks and/or infringement of the Sesame Street Copyrighted Works. *Id.* at ¶ 19. Because of this, Plaintiff has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. *Id.* Recently, Plaintiff has identified many fully interactive e-commerce stores offering products on online marketplace platforms, including the e-commerce stores operating under the Seller Aliases, which were offering for sale and selling Unauthorized Products to consumers in this Judicial District and throughout the United States. *Id.*

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases, similarities between the Unauthorized Products sold by Defendants, and common tactics employed to evade enforcement efforts, establish a logical relationship among the Defendants and demonstrate that Defendants are interrelated. *See id.* at ¶¶ 21–29.

### III.   ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Sesame Street Trademarks and Sesame Street Copyrighted Works. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from the sale of Unauthorized Products and would preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. *See* Declaration of Martin F. Trainor (the "Trainor Dec.") at ¶¶ 2–5. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary injunctive relief … can be granted"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

4

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, the Copyright Act 17 U.S.C. § 501, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target their business activities at consumers in the United States, including Indiana, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Indiana residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Indiana, accept payment in U.S. dollars, and, on information and belief, sell Unauthorized Products to residents of Indiana. *See* Complaint at §§ 2, 27, 35–36. *See NBA Properties, Incorporated v. HANWJH*, 46 F.4th 614, 624 (7th Cir. Aug. 16, 2022) ("[I]n assessing purposeful direction, what matters is [the defendant's] structuring of its own activities so as to target the [Indiana] market"). As such, each Defendant is committing tortious acts in Indiana, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in Indiana.

    a. <u>Standard for Temporary Restraining Order and Preliminary Injunction</u>

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *Black v. Friedrichsen*, No. 1:19-CV-307-TLS-SLC, 2022 WL 374502, at *2 (N.D. Ind. Feb. 8, 2022) (quoting *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 (N.D. Ill. 2019)). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer

5

irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. V. Mead Johnson & Co.*, 971 F. 2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need to favor the movant's position. *Id.*

    b. <u>Plaintiff Will Likely Succeed on the Merits</u>

        *i. Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting and False Designation of Origin Claims*

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. *See* 15 U.S.C. § 1125(a). First, Plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, a Plaintiff must show that the challenged mark is likely to cause confusion among consumers. *Id.*

The Sesame Street Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office. The Sesame Street Trademarks have been continuously used

6

and never abandoned. Varley Dec. at ¶ 15. The registrations for the Sesame Street Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the Sesame Street Trademarks pursuant to § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the Sesame Street Trademarks, and none of the Defendants are authorized retailers of Sesame Street Products. *Id.* at ¶ 22.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from certain Defendants' use of the Sesame Street Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiff has submitted extensive documentation showing that certain Defendants are selling Unauthorized Products that look similar to Sesame Street Products and use infringing and counterfeit marks identical to the Sesame Street Trademarks. *See* Varley Declaration at ¶ 20. These Defendants sell products using the Sesame Street Trademarks to the same consumers that Plaintiff targets. *Id.* at ¶¶ 10, 21. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing Sesame Street Products from Unauthorized Products. Defendants are intentionally trying to induce consumers to purchase Unauthorized Products by advertising Unauthorized Products using the Sesame Street Trademarks and/or by copying the Sesame Street Copyrighted Works. *Id*. at ¶ 22. Evidence of actual consumer confusion

7

is not required to prove that a likelihood of confusion exists, particularly given the compelling evidence that Defendants are attempting to "palm off" their goods as Sesame Street Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Accordingly, Plaintiff is likely to establish a prima facie case of trademark infringement and counterfeiting and false designation of origin.

      *ii. Plaintiff is Likely to Succeed on Its Copyright Infringement Claim*

 The United States Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner … is an infringer of the copyright." 17 U.S.C. § 501. Among these exclusive rights granted to Plaintiff under the Copyright Act is the exclusive right to reproduce, prepare derivative works of, distribute copies of, and display the Sesame Street Copyrighted Works to the public. 17 U.S.C. § 106.

 To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007) (internal citations omitted). Copying can be shown through direct evidence, or it can be inferred where a defendant had access to the copyrighted work and the accused work is substantially similar. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1102 (N.D. Ill. 2005). To determine whether there is a substantial similarity that indicates infringement, courts use the "ordinary observer" test which asks whether "an ordinary reasonable person would conclude that the defendant unlawfully appropriated protectable expression by taking material of substance and value." *Id.* A work may be deemed infringing if it captures the "total concept and feel of the copyrighted work." *Id.*

 With respect to the first element, Plaintiff is the owner of the Sesame Street Copyrighted Works, including the distinctive characters embodied therein. *See Penguin Random House LLC v.*

8

*Colting*, 270 F. Supp. 3d 736, 746 (S.D.N.Y. 2017) ("copyright law *does* protect characters who are sufficiently delineated to be original") (citing *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004) ("[n]o more is required for a character copyright"). Regarding the second element, certain Defendants are willfully and deliberately reproducing the Sesame Street Copyrighted Works in their entirety and are willfully and deliberately distributing copies of the Sesame Street Copyrighted Works to the public by sale. Defendants' unauthorized copies are identical or substantially similar to the Sesame Street Copyrighted Works. As this type of copying directly infringes Plaintiff's rights under 17 U.S.C. § 106, Plaintiff has proved it has a reasonable likelihood of success on the merits of its copyright infringement claim.

    c. <u>There Is No Adequate Remedy At Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief</u>

Because Plaintiff has shown a likelihood of success on the merits on its trademark infringement claim, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook*, 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000)). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (quoting *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation. *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612

9

F.2d 1018, 1026 (7th Cir. 1979) (quoting 4 Calmann *Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970).

Additionally, irreparable injury in copyright infringement cases is shown when "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Salinger v. Colting*, 607 F.3d 68, 80 (citing *Ebay Inc. v Mercexchange, L. L. C.*, 547 US 388, 391 (2006)). For example, an injury that "is not easily measurable in monetary terms, such as an injury to reputation or goodwill, is often viewed as irreparable." *Enverve, Inc v Unger Meat Company*, 779 F Supp 2d 840, 844 (N.D. Ill 2011) (citing 11A Charles Alan Wright, Arthur Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice Procedure* § 2948.1 (2d ed.)).

Defendants' unauthorized use of the Sesame Street Trademarks and/or Sesame Street Copyrighted Works has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Varley Dec. at ¶¶ 30–34. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. V. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002).

For the reasons state above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* TRO is not issued in accordance with Federal Rule of Civil Procedure 65(b). Varley Dec. at ¶ 35.

    d. <u>The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest is Served by Entry of the Injunction</u>

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if

10

preliminary relief is not granted, then it must next consider the harm Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm that Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, certain Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587–88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (quoting *American Home Prods. Corp. v. Johnson Chem. Co.,* 589 F.2d 103, 107 (2d Cir. 1978 ) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*., 929 F. Supp. 473, 478 (D.D.C. 1996).

Additionally, as willful copyright infringers, certain Defendants are entitled to little equitable consideration. *See My-T Fine Corporation v. Samuels*, 69 F.2d 76, 78 (2nd Cir. 1934). There is also a genuine public interest in upholding copyright protections. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983) ("[i]t is virtually axiomatic that the public interest can only be served by upholding copyright protections…").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Unauthorized Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Defendants are operating their e-commerce stores with Plaintiff's approval and endorsement. In this case, the injury to the public is significant, and the injunctive

11

relief Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

IV.    **THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE**

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …" 15 U.S.C. § 1116(a).

> a. <u>A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Sesame Street Trademarks and/or the Sesame Street Copyrighted Works is Appropriate</u>

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the Sesame Street Trademarks or substantially similar marks, and/or copying and distributing the Sesame Street Copyrighted Works on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to the Sesame Street brand and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Sesame Street Trademarks and/or copying and distributing the Sesame Street Copyrighted Works. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiff is currently unaware of the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute, sell, and offer to sell Unauthorized Products. District courts in the Seventh Circuit have authorized immediate injunctive relief in similar cases involving trademark counterfeiting and infringement. *See, e.g., Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-00161 (N.D. Ind. Apr. 11, 2025) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

12

b. <u>Preventing the Fraudulent Transfer of Assets Is Appropriate</u>

Plaintiff requests an *ex parte* restraint of Defendants' assets so Plaintiff's right to an equitable accounting of Defendants' profits from Unauthorized Product sales is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in offshore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). Additionally, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover … defendant's profits." Plaintiff has also shown a strong likelihood of succeeding on the merits of its copyright infringement claim and is therefore entitled to recover "… any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504(b). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

The Court in *LeSEA, Inc. v. LeSEA Broadcasting Corporation* recognized that, despite the general rule that a court cannot restrain a defendant's assets pre-judgment, "a restraint on assets is available when a plaintiff seeks equitable relief." *LeSEA*, 2022 WL 621039, at *2 (N.D. Ind. Mar. 3, 2022) (internal citations omitted). While the *LeSEA* court declined to enter an asset restraint order because the plaintiff failed to make any showing that the defendant had any intention to hide

13

its assets or destroy its property, that is not the case here. As explained in the Trainor Declaration, foreign e-commerce store owners and/or operators peddling infringing goods often move funds from their financial accounts to offshore bank accounts outside the jurisdiction of the Court once notice of the lawsuit is received. *See* Trainor Dec. at ¶¶ 2–5; *see also, e.g., Chrome Cherry Ltd. v. The P'Ships*, 2021 WL 6752296 at * 2 (N.D. Ill. Oct. 20, 2021) ("Plaintiff has demonstrated that should Defendants be informed of this proceeding before a temporary restraining order could issue, Defendants will likely register new e-commerce stores under new aliases and move assets to offshore bank accounts outside the jurisdiction of the Court"). Further, district courts in the Seventh Circuit have repeatedly entered asset restraining orders in factually analogous cases asserting intellectual property infringement claims. *See Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-00161 (N.D. Ind. Apr. 11, 2025) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore accounts. Accordingly, an asset restraint is proper.

    c. <u>Plaintiff Is Entitled to Expedited Discovery</u>

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978). Courts have wide latitude in determining whether to grant a party's request for discovery. *Hay v. Indiana State Bd. of Tax Com'rs*, 312 F.3d 876, 882 (7th Cir. 2002). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2)).

14

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Glitch Productions Pty, Ltd v. The P'ships*, No. 25-cv-00161 (N.D. Ind. Apr. 11, 2025) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiff's evidence of Defendant's infringement, Plaintiff respectfully requests this Court require Plaintiff to post a bond of no more than ten thousand U.S. dollars ($10,000.00), which is aligned with the bond requirement set by other district courts in the Seventh Circuit.

## VI.     CONCLUSION

Defendants' unlawful operations are irreparably harming Plaintiff's business, its Sesame Street brand, and United States consumers. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a TRO in the form submitted herewith.

Dated this 20th day of August 2025.	Respectfully submitted,

				/s/ Martin F. Trainor
				Martin F. Trainor
				Sydney Fenton
				Alexander Whang
				TME Law, P.C.
				10 S. Riverside Plaza
				Suite 875
				Chicago, Illinois 60606
				708.475.1127
				martin@tme-law.com
				sydney@tme-law.com
				alexander@tme-law.com

				*Counsel for Plaintiff Sesame Workshop*